We will hear argument first in case number 25-2478, Salazar v. NBA. Mr. Hammack, whenever you're ready. Good morning, Your Honors, and may it please the Court. The last time this case was heard, this Court said something simple but profound. It said, quote, the VPPA is no dinosaur statute, unquote. It said Congress, quote, did not intend for the VPPA to gather dust next to our VHS tapes, unquote. Since then, the Court has decided Solomon, which held the phrase personally identifiable information, includes only what an ordinary person understands and not what a technologically sophisticated entity does. This is an atextual limitation on the VPPA, which nowhere mentions an ordinary person, nowhere draws distinctions among recipients based on technological sophistication, and instead prohibits knowing disclosures of PII to any person. Solomon's ordinary person test is exactly the kind of atextual rule Ames, Antrix, AJT, and RICO prohibit. Well, that says all very well. I mean, those are, to me, those are strong arguments. But what do you do about the fact that we have precedent, binding precedent, facing us? How do we deal with the problem that we are bound by the prior decisions of our Court? I think you look to those four intervening Supreme Court cases, Your Honor, and what those four cases teach us. Well, none of them is really directly on point. None of them is speaking about this statute. True enough, Your Honor. None of them speak directly to the VPPA, and none of them directly overrule Solomon. Speaking in very, very broad, general terms. I don't think they're as general as they've been sometimes represented here. I would say that Ames, Your Honor, and AJT in particular, focus on any person and any individual language. And they specifically say that when Congress refers to that any person or any individual language, it draws no distinction, and the courts can draw no distinctions among the kind of people that are covered. And here, Solomon does exactly that. It has any person, disclosures are prohibited to any person, and instead, Solomon injects an atextual limitation based on technological sophistication. It doesn't appear anywhere in the VPPA. I mean, you call it atextual, but that was an effort to interpret the statute based on the words and the structure, the ordinary tools we use for statutory interpretation. So, I guess my question is, what do you mean by atextual? I mean, anything, there's a lot of things we do under the rubric of statutory interpretation that isn't from the words. I would point the court to two portions of Solomon in particular that bolster the conclusion that its result is atextual. First, on page 48 of the opinion, it says that this court was, for the first time, interpreting PII beyond the statutory definition. So, beyond the statutory definition is already one hint that we're going somewhere atextual. And then the second point, I believe it's on page 51 of the opinion, maybe 52, the court gives its very first reason for adopting the ordinary person test. And it says, the language of the definition itself can be read to encompass digital identifiers and information only a technologically sophisticated company can understand. So, the language itself encompasses that information, but Solomon's ordinary person test excludes that information from the coverage of the BPPA. So, I think for those reasons, it is atextual. And Solomon also wasn't engaging in traditional tools of statutory interpretation. It wasn't applying canons of statutory interpretation of any kind. Instead, it's three reasons for adopting the test were, one, the one I just mentioned. Two, you know, I guess it better informed, you know, providers of their obligations. And three, the fact that you have this internet issue. The Congress didn't anticipate necessarily how big the internet would get in 1988. And I think it's tempting, your honors, to think Solomon's rule does no real harm precisely because you might say, you know, it applies only to these kind of new technologies that Congress didn't envision in 1988, but that just isn't true. Congress knew about, for example, and used, I'm sure, fax machines. And it wrote the BPPA in terms broad enough to cover disclosures that occur through fax machines. Under Solomon, though, a fax-based disclosure of information that identifies a person's video watching history escapes the BPPA's prohibition. An ordinary person does not understand the audio tones, those terrible screeches and howls that fax machines use to send coded messages between devices. Can I just jump in for a second to take you back to this question of when you mentioned that the Supreme Court cases that you were relying on to, I guess, make the argument that the atextual argument. And I think in response to Judge LaValle's comment that, well, is this, are these cases really saying something new? I mean, it's always been the case, the notion that there should not be atextual readings of statutes, that wasn't something new that came about as a result of these decisions. And I think I heard you to say that what made these cases different was the focus on any person. And so I'm just wondering, so in your mind, that's what's new in these Supreme Court cases? That's what makes it such that we could say, oh, this is something new that the Supreme Court has not spoken to before and it directly undermines what our prior court held in Solomon? So two responses, Your Honor. First, I don't think under this Court's precedence the intervening Supreme Court decisions have to present something entirely new. I don't think that's a requirement in any of the tests that we cited in our brief, that the, it's not like an EDPA analysis where we need something new and retroactive that wasn't there before. I do think, as I explained earlier, that these four cases do, in fact, capture something that wasn't articulated in earlier Supreme Court cases, or at least not as particularly articulated in earlier Supreme Court cases. And then I would also say they clearly came after Solomon, and they clearly are incompatible with and inconsistent with Solomon's analysis. They're methodologically inconsistent. One is saying you have to look at what the text requires. You have, when you have any person language or any individual language, you can't draw distinctions among people. And Solomon does both of those things. It draws distinctions that aren't there in the statute, and then it doesn't look at what the text requires. It imposes a new requirement over top of what the text says. So I would say for those two reasons, that's the incompatibility that we're looking at, even if it's not entirely new and had never been before seen in Supreme Court cases anywhere. I do want to go back to the facts example, Your Honor, just for a moment, and say that under Solomon, that facts-based disclosure that identifies a person's video-watching history escapes the VPPA's prohibition. So all, for example, Potomac Video would have to do to avoid the VPPA's reach is use a fax machine. Even though Congress anticipated fax machines, used fax machines, knew about fax machines, that simple of a device, technological use, that simple of a move, it brings the VPPA's coverage down. Can you explain that, your proposition, that all they'd have to do is use a fax machine? Why does that escape? Because Solomon directs the court to look at that intervening, that kind of, if you captured the transmission, the coded transmission itself, would an ordinary person understand it? And a fax machine relies on audio tones, those screeches and howls I was talking about. And if the ordinary person heard those terrible screeches and howls that fax machines use, it wouldn't understand those audio tones to identify a person as having requested or obtained a video material. It simply wouldn't. It would need, the ordinary person would need that. Right, but isn't this disclosure have to be to a person? So whether or not the fax, I mean, the way you're describing it is as if the fax machine is the person to whom the disclosure is being made. But I mean, the fax machine, the information going to the fax machine has no meaning, I guess, if there's no person to see it or receive it. I guess the same would be true, your honor, of the way Facebook systems use the computer code transmissions that Solomon and Hughes and Golden analyzed. The same thing is true. The fax machine, I'm not much on technology, but when I see a fax, it comes forth as a written document. Exactly right, which is precisely my point. And I understand the argument to say that if the written document says this person watched the Jack Benny show, that's accessible to an ordinary person. But if it says X, Y, Z, question mark, Z, Google, da, da, da, da, that's not accessible to the ordinary person, although it means the same thing as the other transmission. That's a strong argument, but that's a strong argument for initially deciding the case the way that you advocate. But I don't understand why it releases us from the binding precedent. So I would just respond that Solomon doesn't look to the way the fax prints out from the machine, the way Facebook actually sees the information. Instead, it grabs the coded transmission itself, the way two devices, two computers are communicating with each other, and asks, does the ordinary person understand that coded transmission? And Hughes is really specific about this point. It says it doesn't matter that Facebook receives the transmission as plain English, plain text, the way your honor just described the way a fax appears. It doesn't matter that Facebook receives it that way. The ordinary person has to understand the underlying coded transmission. I think one of the arguments that you make is that going back to the reason, the incident that gave rise to the statute, the communication of Bork's, of the Bork family's television watching habits. If the person doing the revelation picks up the telephone and says, Bork watched such and such a program, that's accessible to the ordinary person. But if he picks up the telephone and says, GYX42963, that's not intended to tell the ordinary person, even though it may communicate exactly the same message to the recipient. Right? I do agree with that. Yes, Your Honor. Okay. You've reserved a couple minutes. Thank you. Ms. Preston. Good morning, Your Honors. Hillary Preston from Vincent and Elkins for the Appellee National Basketball Association. I want to start with the bulk of the comments that my colleague just made around how fax machines work and how those do or do not disclose information that could qualify as a PII. First of all, none of that's in the record, just to be clear. And the hypothetical is actually not one that this court needs to engage in. We have here no fewer than three Second Circuit decisions, starting with Solomon, that address a set of allegations that are materially indistinguishable from the facts that Mr. Salazar makes in his complaint against the NBA. All three of Solomon, Hughes, and Golden relate to the exact same type of disclosure. They are all pixel-based disclosures. They all involve the application of this ordinary person standard that Golden enunciated, then applied in Hughes to a set of factual allegations that involved a pixel-based disclosure, then applied again in Golden to a set of facts that involved this pixel-based disclosure. And that is the same analysis that the district court did here. Judge Rosham looked at the facts as alleged in this complaint, applied Solomon, looked at the teachings of Hughes, and said the only outcome on this law and this set of facts is dismissal. And we think it's appropriate for this court to affirm that dismissal. I do want to address this question around the three intervening, three at the initial start of the briefing, Supreme Court cases, then a fourth, and then a fifth by the time we got through the Rule 28J letters that all my colleagues says create a new rule about a prohibition on atextual disclosures. This court has also addressed that question in Golden. In Golden, just about two months ago, this court looked at the exact same arguments that these three Supreme Court cases were intervening such that this court was empowered to disregard the binding precedent of Solomon. And this court agreed that that was not actually the case. And if we look at the Golden decision, it expressly says that far from announcing new rules, referring to those three Supreme Court cases, that Solomon, quote, simply applies longstanding principles that a statute's text is the lodestar for its interpretation and other considerations may not be used to reach an interpretation at odds with the text. And it talks about that that's the approach that was purportedly in these new intervening Supreme Court decisions. That's what Solomon did. There is no basis for this court to defer from the binding precedent. Speaking for myself alone, if I were a district judge and I needed only myself to agree with me as to what I write, I would probably write, if I face this question, I would probably write something along the lines of saying I am bound by Solomon. I must decide this case in your favor. But I think it's wrong. And I think that that people who examine this question in the future, including the Supreme Court and the Second Circuit, if they go in bank with it, should or decide otherwise to depart from Solomon. I think that they should reverse it because it seems to me that the standard that we've adopted in Solomon really undermines the statute and the purpose of the statute as well as the words of the statute. As I just said previously to your colleague, the application of that standard would have allowed the person who disclosed the Bork family's watching habits to get away with it, despite the statute designed to prevent it, as long as they used a code instead of using straightforward language. Now, so if this court rendered in this case that kind of a response to this case, would that be satisfactory to you? Well, Your Honor, I think this court is bound by Solomon, which is the answer to your question. And that's what I'm saying. If we decide, if we render a decision in this case saying we're bound by Solomon, so we're deciding in your favor, but we think it's wrong, and we think the Supreme Court should overturn it, or perhaps that this court should go in bank and overturn it, and the other courts who face it should decide not in accordance with Solomon, is that, would you go home and say, that's great, wonderful, I won the case, that's very satisfactory? Well, I don't know that I would go home and say that's great. I do think affirming the district court's dismissal is the appropriate result. So in that way, yes, that is exactly what we're asking for. We do think the reasoning of Solomon is correct. The reasoning of Solomon focuses on the point of liability-inducing disclosure. And I recall the VPPA is not about what the recipient does with the information that it receives. The point is to govern how does the entity that possesses the PII, the personally-identifiable information, what do they disclose? And here, the only factual allegation of what is disclosed are the 10 to 20 to 30 lines of computer code which do not disclose to an ordinary person any information about, frankly, for most of us, any information about anything. And I think that that does mean that the Solomon decision is correct. But Your Honor is absolutely right. So I'm saying that – supposing that congressmen and senators who passed the act read a judicial decision back in those days and the judicial decision says, Well, if the video store telephoned to a person who was interested in knowing the Bork family's viewing habits or interested in knowing any person's viewing habits, if the video store communicates that information in code, it's not covered by the statute. If they communicate it in ordinary language, it is covered by the statute. So if they did it in code, then all they need to do to escape the statute is put it into code. Would they think that the statute had been observed, that the purpose of the statute and the words of the statute had been carried out by such a decision? I don't know, Your Honor. I don't know. But I do know that this court has had an opportunity to review exactly this decision multiple times and has come out in ruling that this disclosure, these facts, is insufficient. And I will point out as well that in the Hughes case, the Hughes v. NFL, which my colleague and I argued in front of this court about a year ago, he also did ask this court for en banc review in Hughes based on this issue, saying the court should reconsider the result of the application of the ordinary person test to these same facts. The court denied en banc review, and the Supreme Court has now denied the cert petition in Hughes. So we do have some indication of both this court's interest in taking the issue up en banc and the Supreme Court's issue in taking it up for cert review. Thank you, Your Honors. Thank you, Counsel. We'll hear rebuttal. Thank you, Your Honors. Just a couple of very quick points. First, Your Honor, we would welcome the writing of an opinion, whether it's a concurrence or a dissent or whatever form it might take, that states that the court is bound by Solomon and yet disagrees with its reasoning and urges this court and the Supreme Court to review it further. We, Your Honor, would welcome that as a win at this stage. So I would be happy to see that opinion, first of all. The second point my colleague just said, that the VPPA isn't about what the recipient decides to do with the information. And I happen to agree with that. It prohibits the VTSP from knowingly disclosing certain kinds of information. And here I think it's really important to keep in mind that the NBA didn't – well, I guess let me start over. The NBA knew it was not disclosing the information it disclosed to an ordinary person. The NBA knew it was disclosing the information to Facebook. And Facebook, it knew, didn't need to break the code or something. Facebook wrote that code. Facebook created the pixel. Facebook told the NBA how to program the pixel to disclose certain kinds of information, including, critically, information about the videos users watched on NBA.com. The NBA specifically programmed the pixel on its website to disclose that exact information. It knew exactly what it was doing. It meets every requirement actually set out in the VPPA. The only requirement it doesn't meet is the A-text to an ordinary person test. With that, Your Honors, we ask that you reverse the district court's decision and remand for further proceedings. Thank you very much. Thank you, counsel. Thank you both. We'll take the case under request.